**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| NATHANIEL L. HART, | * | |
| Plaintiff, | * | |
| v | * | Civil Action No. GLR-15-478 |
| M. J. ROSE, et al.,[1] | * | |
| Defendant. | * | |

**MEMORANDUM OPINION**

Self-represented Plaintiff Nathaniel L. Hart, an inmate at North Branch Correctional Institution ("NBCI"), initiated this action on February 18, 2015, alleging a violation of his First Amendment rights pursuant to 42 U.S.C. § 1983 (2012), through interference with, or processing of his mail later than prescribed by Division of Corrections Directive DCD-250-1. Hart alleges his incoming mail on October 21, 2014, November 1, 2014, and January 23, 2015, was not timely delivered. He requests $1 million in damages.

**I. BACKGROUND**

On November 19, 2014, Hart filed two Administrative Request Procedure ("ARP") requests complaining about mailroom processing. In ARP #NBCI 3076-14, Hart complained that mail addressed to him was received at NBCI on October 8, 2014, but was not delivered to him until October 21, 2014. (ECF 4-1, p. 1). On January 20, 2015, the Warden's designee found the ARP meritorious, stating:

> An investigation revealed that in accordance with DCD 250-1 section VI-H, received mail will not be held for more than 24 hours excluding weekends, and holidays. Your mail was being processed for an additional 9 days excluding weekend and holidays. This was due in part to an overwhelming amount of incoming mail and limited staff to process incoming mail. These issues have been addressed in an

---

[1] In the supplement, Hart named Frank Bishop, Warden and the State of Maryland Department of Public Safety and Correctional Services ("DPSCS"). (ECF No. 4). The Clerk will be directed to revise the docket accordingly.

attempt to ensure future incidents of this nature are not repeated.

Id.

In the second ARP, which was designated NBCI # 3077-14, Hart complained that on November 1, 2014, he received notice from the NBCI mailroom that mail addressed to him had been returned to the sender. Hart asserts the mail contained the proper identifying information. (ECF 4-1, p. 2). On January 20, 2015, the Warden's designee dismissed the ARP as lacking merit, stating:

> Specifically, you claim that two money orders were returned against policy and procedure. Furthermore, you claim that it was clear that with the number provided you could have been identified and provided the funds. An investigation revealed that the money order in question was returned on or about 11-01-14 to the NBCI mailroom. During that time, a money order sent to an inmate required both the DOC number and SID number which had to be accurate. The money voucher in question did not provide all required information for you. As a result of the lack of information the voucher was returned. As of 12-11-14, this policy was changed and any voucher received must have one of the above mentioned numbers and must be accurate. Your administrative remedy allegations are without merit.

Id.[2]

On January 27, 2015, Hart filed a third ARP, # NBCI # 0191-15, complaining that a money order, sent to him by his family approximately two weeks earlier, had not yet been posted to his account. As a result, Hart alleges to have "missed making commissary." At the direction of the ARP coordinator, Hart supplemented the ARP on February 5, 2015. In the supplement, Hart stated that he had since been provided a receipt indicating that his $ 100 money order was received on January 20, 2015. On February 13, 2015, the ARP was dismissed by the Warden's designee, who stated:

> Specifically, your complaint is regarding money orders sent by your family that has [sic] yet to be posted in your account. An investigation revealed that you did receive mail from the WBCI/WCI mailroom on 01-20-15 which contained transcripts. Due to the item being packaged in an envelope which is considered contraband, it was placed in an acceptable package. A notification of this was provided to you from the mailroom. There was no indication that a money order was included in the original package. In the event a money order would have been included, the mailroom staff

---

[2] Maryland inmates are now assigned two commitment numbers: a DOC (Division of Correction) number and a SID (state identification) number. See State v. Dett, 891 A.2d 1113, 1115 (Md. 2006) (noting that SID numbers are directly linked to an individual's fingerprints).

2

would indicate this by stamping the front of the packaging and providing a receipt. You are aware of the process due to the fact during the interview you provided your own example in which you received a money order and it was process and applied to your account. Your administrative remedy allegations are without merit.

## II. DISCUSSION

**A.    Standard of Review**

"Under 28 U.S.C.A. § 1915(e), which governs [in forma pauperis] filings . . . , a district court must dismiss an action that the court finds to be frivolous or malicious or that fails to state a claim." Michau v. Charleston Cnty., S.C., 434 F.3d 725, 728 (4th Cir. 2006). Although a pro se plaintiff's pleadings are liberally construed to allow the development of a potentially meritorious case, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (citing Rice v. Olson, 324 U.S. 786, 791-92 (1945)), the complaint must, nonetheless, articulate facts that, when accepted as true, demonstrate a claim to relief that is plausible on its face, see Weller v. Dep't of Soc. Servs. for City of Balt., 901 F.2d 387, 391 (4th Cir. 1990) (dismissing pro se complaint that fails to allege any factual basis for the claims); see also Ashcroft v. Iqbal, 556 U.S. 662, 685 (2009) (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions"). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).

Here, the Court will dismiss this action because Hart has failed to set out a claim entitling him to relief.

**B.    Analysis**

   **1.    Sovereign Immunity**

First, Hart's allegations against the DPSCS, a Maryland state agency, and Warden Bishop and Mailroom Administrator, Mary Jane Rose in their official capacities, are barred by the Eleventh Amendment.

3

The Eleventh Amendment immunizes states from suit brought in federal court absent waiver from the state or a clear exercise of congressional power to override such immunity under the Fourteenth Amendment. Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989). The State of Maryland has not expressly waived its immunity under the Eleventh Amendment to such suits. Further, a suit against a state official acting in his official capacity is no different from a suit against the state itself. Will, 491 U.S. at 71. Accordingly, the State of Maryland, DPSCS, and Bishop and Rose, in their official capacities, must be dismissed as Defendants from this action.

    **2.**    **Supervisory Liability**

Next, to the extent Hart seeks to hold Bishop and Rose liable in their individual capacities, Hart's claim similarly fails.

Section 1983 requires a showing of personal fault, whether based upon the defendant's own conduct or another's conduct in executing the defendant's policies or customs. See Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, it must be affirmatively shown the official acted personally to deprive the plaintiff's rights). A claim based on the doctrine of respondeat superior has no place in § 1983 litigation. See Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); see also Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a Bivens suit). Thus, supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). Here, Barkley has alleged no facts supporting a claim of supervisory liability on the part of Bishop and Rose.

Accordingly, Bishop and Rose, in their individual capacities, must also be dismissed from this action.

    **3.      First Amendment**

Next, prison inmates specifically retain protections afforded by the First Amendment. <u>Pell v. Procunier</u>, 417 U.S. 817, 822 (1974). "Regulations governing incoming mail[, however,] are valid if they are 'reasonably related to legitimate penological interests.'" <u>Altizer v. Deeds</u>, 191 F.3d 540, 550 (4th Cir. 1999) (quoting <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 413 (1989)). "Without question, the opening and inspecting of an inmate's . . . mail is reasonably related to legitimate penological interests, and, therefore, constitutional." <u>Altizer</u>, 191 F.3d at 547-48.

Here, Hart identifies, and the Warden's designee acknowledged, a single occasion in which his mail was delayed beyond the twenty-four hour period indicated by Division of Corrections Directive DCD-250-1. Hart does not allege that delivery of the mail was restricted any further. Moreover, he fails to allege that he was harmed by the delay. Thus, Hart has failed to demonstrate how the handling of his incoming personal correspondence violated any protected right. Further, to the extent Hart alleges Defendants failed to comply with DCD directive 250-1 in this one instance, the adoption of procedural guidelines does not give rise to a liberty interest. <u>See</u> <u>Culbert v. Young</u>, 834 F.2d 624, 627-28 (7th Cir. 1987) (holding that a prison disciplinary regulation did not provide the plaintiff with a protected liberty interest). Thus, the failure to strictly comply with Division of Corrections Directives does not, in and of itself, result in a violation of due process.

With respect to the delay in money orders being credited to his account, Hart fails to state any basis for his claim that the policy requiring incoming prisoner mail to show the prisoner's name, Division of Corrections ("DOC") number, and state identification number contravened the First Amendment. As the Warden's designee explained in the response to Hart's ARP, the money order did not bear both his DOC and state prisoner identification numbers, therefore, the mail was returned to sender in accordance with the Division of Corrections Directives mail handling procedures operative at the time. Since then, the policy has been changed so that mail bearing the inmate's name

and either an accurate DOC or SID number is sufficient. Finally, Hart's generally stated allegation that the delay in receiving the money order caused him to "miss commissary" fails to particularize any harm suffered and plainly fails to amount to harm of constitutional dimension.

**4. 28 U.S.C. § 1915(g)**

Finally, under 28 U.S.C. § 1915(g) (2012) a prisoner litigant will not be granted in forma pauperis status if he has "on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." Because the instant case is dismissed for failure to state a claim upon which relief may be granted, the Clerk shall be directed to note a "strike" on the docket. This will constitute Hart's first strike under § 1915(g).

## III. CONCLUSION

For the foregoing reasons, this case will be DISMISSED pursuant to 28 U.S.C. §§ 1915, 1915A. A separate Order will follow.

/s/

May 15, 2015
Date

George L. Russell, III
United States District Judge